USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/5/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
DELROY ASKINS, :
:
Plaintiff, :
:
-against- : 1:19-cv-4927-GHW
:
METROPOLITAN TRANSIT AUTHORITY, : MEMORANDUM OPINION
NEW YORK CITY TRANSIT AUTHORITY, : AND ORDER
RICHARD ROMAN, and JOHN DOE BUS :
DRIVERS #1-7 :
:
Defendants. :
:
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

     Plaintiff Delroy Askins is confined to a wheelchair. Mr. Askins filed this action *pro se*, alleging disability discrimination because he was unable to board New York City Transit Authority ("NYCTA") and Metropolitan Transportation Authority ("MTA") buses. Mr. Askins alleges that bus drivers refused to allow him to board and, when they stopped for him, refused to lower a wheelchair ramp on the bus directly onto the sidewalk, making it more difficult for him to board. Because Mr. Askins has plausibly alleged a failure by the NYCTA and MTA buses to accommodate him, he has adequately pleaded a claim for disability discrimination under federal, state, and city law. However, Mr. Askins' federal claims against the individual bus operators in their individual capacities are not viable because neither the Americans with Disabilities Act ("ADA") nor the Rehabilitation Act permits suits against them in their individual capacity. Accordingly, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Facts[1]

Mr. Askins is a paraplegic who is confined to a wheelchair. SAC at 15. To travel around New York City, Mr. Askins relies primarily on the New York City bus system. *Id.* Mr. Askins alleges that bus drivers generally pull up close to the curb and lower a mechanical ramp directly onto the sidewalk to enable wheelchair-bound passengers to board. *Id.* "The process potentially adds several minutes to the bus route," but accommodates wheelchair-bound patrons. *Id.*

The SAC alleges that "Mr. Askins rides NYC buses approximately 8-12 times per week." *Id.* The SAC further alleges "that bus drivers fail to lower the wheelchair ramp onto the sidewalk for him at least six times per week, requiring him to drop off the sidewalk curb in his wheelchair, wheel over [the] gutter and pavement to the bus, then strain to lift himself onto the bus." *Id.* Additionally, Mr. Askins alleges that "the bus drivers leave him behind altogether at least three times per week" and asserts that he "experiences difficulties boarding at least half the time he attempts to do so." *Id.* at 17. Mr. Askins alleges that bus drivers fail to stop for him even though he waves his arms to attract the bus driver's attention "[a]lmost every time he attempts to board a bus." *Id.*

The SAC alleges eight specific instances in which the bus drivers allegedly failed to stop or impaired Mr. Askins ability to board by not lowering the ramp onto the sidewalk. *Id.* at 17, 21. The first alleged incident occurred on September 16, 2016 at approximately 11:05 a.m. when Mr. Askins attempted to board the Bx15 at the 125th St. and Lexington Avenue bus stop. *Id.* at 17. The bus driver allegedly saw Mr. Askins but continued on his route without stopping. *Id.* The second incident allegedly occurred on February 25, 2018 at approximately 11:45 a.m. when Mr. Askins

---

[1] These facts are drawn from Mr. Askins' Second Amended Complaint ("SAC"), Dkt No. 22 and are accepted as true for the purposes of this motion to dismiss. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

attempted to board the Bx15 at the 125th St. and Park Avenue stop. *Id.* The bus driver, Richard Roman, allegedly allowed "non-wheelchair-bound passengers to board, but quickly pulled away before Mr. Askins could board despite Mr. Askins being there at the same time as the other passengers and there being space on the bus for [him]." *Id.*

The third incident occurred on June 5, 2018 at approximately 8:23 p.m. *Id.* at 19. While attempting to board the Bx15 bus with identification number 5961, Mr. Askins allegedly asked the bus driver to pull up closer to the curb. *Id.* The bus driver allegedly refused to accommodate Mr. Askins and instead lowered the ramp directly onto the street. *Id.* The bus driver also purportedly did not provide Mr. Askins any help in getting onto the bus and, thus, Mr. Askins was allegedly forced to strain himself to get on board. *Id.* Mr. Askins allegedly has video evidence substantiating this incident. *Id.*

The fourth alleged incident took place on July 25, 2018 at approximately 5:43 p.m., when the M1 bus did not pull up to the curb at the 101st Street and Madison stop. *Id.* The bus had identification numbers 3887 and 222. *Id.* Mr. Askins allegedly asked the bus driver to pull up to the curb, but he ignored Mr. Askins despite allegedly making eye contact with him. *Id.* Instead, the bus driver allegedly lowered the ramp directly onto the street and made no effort to assist Mr. Askins onto the bus notwithstanding the steeper incline. *Id.* Mr. Askins alleges that he was forced to wheel over a gutter and some pavement to the bus and then strain to wheel himself onto the bus. *Id.* Mr. Askins allegedly has video evidence substantiating this incident. *Id.*

The fifth alleged incident took place on March 30, 2019 at approximately 2:04 p.m., while Mr. Askins waited for the Bx15 bus at the Lexington and 125th street bus station. *Id.* Mr. Askins asked a teenage boy, who was in front of him in line, to inform the bus driver that Mr. Askins would be boarding. *Id.* The bus had identification numbers 108 and 5326. *Id.* at 19-21. After the boy informed the bus driver, the driver allegedly closed the door on the teenager's arm and pulled away,

leaving Mr. Askins behind. *Id.* at 21. Mr. Askins allegedly has photographic evidence of this incident. *Id.*

The sixth alleged incident took place on May 1, 2019 at around 9:28 a.m. when Mr. Askins was returning from a medical appointment in the Bronx. *Id.* Mr. Askins allegedly attempted to board the Bx39 bus at the 233rd Street station but the driver took off without him. *Id.* The bus identification number was 5384. *Id.* Mr. Askins allegedly has photographic evidence of this incident. *Id.*

The seventh alleged incident took place on June 21, 2019 at approximately 1:33 p.m. *Id.* Mr. Askins alleges that although the M101 bus driver saw him, the bus driver did not pull up to the curb. *Id.* Instead, Mr. Askins was allegedly forced to wheel over a gutter and some pavement to the bus and then strain to get on board. *Id.* The bus had identification numbers X44 and 5910. *Id.*

The eighth alleged incident took place on July 16, 2019 at approximately 10:56 a.m. and involved the M60 bus at the 125th and Lexington stop. *Id.* Although the bus driver allegedly saw Mr. Askins, the bus did not pull to the curb and Mr. Askins was again forced to wheel himself onto the street to get on board. *Id.*

**B. Procedural History**

On May 24, 2019, Mr. Askins filed his initial complaint in this action. Dkt No. 2. Mr. Askins subsequently filed an amended complaint on August 9, 2019, Dkt No. 17, and filed the SAC on September 30, 2019. Dkt No. 22. The SAC names NYCTA and the MTA as defendants. SAC at 1. The SAC also names Richard Roman and "John Doe Bus Drivers #1-7" (collectively, the "Individual Defendants") as defendants. *Id.* The SAC asserts claims for relief under the ADA and the Rehabilitation Act (the "Federal Claims"). *Id.* at 3. The SAC also asserts a claim under the New York State Human Rights Law ("NYSHRL"). *Id.* Because Mr. Askins is proceeding *pro se*, the

Court also construes the SAC as asserting a claim under the New York City Human Rights Law ("NYCHRL").

On October 18, 2019, defendants filed a motion to dismiss the SAC. Motion to Dismiss ("MTD"), Dkt No. 23. On December 17, 2019, Mr. Askins filed a memorandum of law in opposition to the defendants' motion to dismiss. Opposition to Motion to Dismiss ("Opp."), Dkt No. 32. Defendants submitted a reply to the memorandum in opposition on January 17, 2020. Dkt No. 33.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations [in the complaint] as true and draw[] all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When ruling on a motion to dismiss, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

It is well established that courts have an obligation to afford a special solicitude to *pro se* litigants. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). The underlying rationale for this rule "is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). The special solicitude extended to *pro se* litigants takes a variety of forms and includes a liberal reading of pleadings and a relaxation of the limits on the amendment of pleadings. *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007); *see also Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980).

However, it is not appropriate to afford *pro se* litigants special solicitude where a licensed attorney assisted in drafting their briefs, motions or other court documents. *See, e.g.*, *Knox v. Cty. of Ulster*, No. 1:11-CV-0112 GTS/CFH, 2013 WL 286282, at *1 n.1 (N.D.N.Y. Jan. 24, 2013) ("[T]he Court strongly suspects that Plaintiff has also been aided by an attorney in the drafting of his papers opposing the current motion, which are organized, typewritten, and contain citations to dozens of instructive legal authorities in proper BlueBook format. . . . Accordingly, the Court will not afford the arguments in Plaintiff's opposition memorandum of law the special solicitude afforded to arguments made by *pro se* litigants."); *Spira v. J.P. Morgan Chase & Co.,* 466 F. App'x 20, 22 n.1 (2d Cir. 2012) (summary order) ("Although Spira purports to act *pro se* in this appeal, he was represented by his wife, a licensed attorney, in the district court, and Spira has not contested Chase's assertion that she is responsible for ghostwriting his appellate briefs. Under these circumstances, Spira is not entitled to claim the special consideration which the courts customarily grant to *pro se* parties.") (quotation omitted). The policy of "liberally construing *pro se* submissions is to protect *pro se* litigants from inadvertent forfeiture of rights due to their lack of legal training." *Knox*, 2013 WL 286282, at

*1 n.1. However, "where, as here, those submissions are 'ghostwritten' by an attorney, such liberal construction may create unfairness toward the opposing party." *Id.*[2]

Mr. Askins' SAC and his opposition to this motion to dismiss were drafted with the substantial assistance of an attorney. *See* SAC at 15 n.1 ("This document was prepared with the assistance of the New York Legal Assistance Group's Clinic for Pro Se Litigants in the S.D.N.Y."); Opp. at 1 n.1 (same). In particular, the typewritten "Statement of Facts" in the SAC is identified as having been prepared with the assistance of NYLAG. However, the remainder of the form complaint used by Mr. Askins in preparing the SAC does not specifically note the involvement of an attorney. Mr. Askins' opposition to the defendant's motion to dismiss was also drafted with the assistance of a licensed attorney. Opp. at 1 n.1. But Mr. Askins alone signed the document.

---

[2] Several courts and commentators have noted ethical questions that can be raised when attorneys ghost-write a litigant's submissions. *See, e.g.*, *Duran v. Carris*, 238 F.3d 1268, 1271-72 (10th Cir. 2001) ("[An attorney's] actions in providing substantial legal assistance to [a party] without entering an appearance in this case not only affords [the party] the benefit of this court's liberal construction of pro se pleadings but also inappropriately shields [the attorney] from responsibility and accountability for his actions and counsel."); *Mejia v. Robinson*, No. 1:16-CV-9706-GHW, 2018 WL 3821625, at *4 (S.D.N.Y. Aug. 10, 2018) ("When an attorney ghostwrites a plaintiff's opposition memorandum, it is the plaintiff, and not the attorney, who is subject to Rule 11's obligations in connection with that memorandum. . . . [B]y not signing her work, Plaintiff's ghost counsel remains free to introduce unsupported, conclusory facts without the threat of personal sanctions. This practice is of concern to the Court.") (citing Fed. R. Civ. P. 11(a)); *see also Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971) (holding that a brief "prepared in any substantial part by a member of the bar" must be signed by the attorney); *Ellingson v. Monroe (In re Ellingson)*, 230 B.R. 426, 435 (Bankr. D. Mont. 1999) (holding that "ghost writing" was a violation of court rules and ABA ethics); *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 885-86 (D. Kan. 1997) (expressing legal and ethical concerns regarding the ghost writing of pleadings by attorneys); *Laremont-Lopez v. Se. Tidewater Opportunity Center*, 968 F. Supp. 1075, 1077 (E.D. Va. 1997) (holding that it is "improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as *pro se*"); *United States v. Eleven Vehicles*, 966 F. Supp. 361, 367 (E.D. Pa. 1997) (holding that ghost writing by an attorney for a *pro se* litigant implicates an attorney's duty of candor to the court, interferes with the court's ability to supervise the litigation, and misrepresents the litigant's right to more liberal construction as a *pro se* litigant). *See generally* John C. Rothermich, *Ethical and Procedural Implications of "Ghostwriting" for Pro Se Litigants: Toward Increased Access to Civil Justice*, 67 Fordham L. Rev. 2687 (1999) (discussing the ethical concerns of attorney ghost-writing for *pro se* litigants). *But see Mejia*, 2018 WL 3821625, at *3 ("The Court recognizes that, unlike sister circuits that condemn attorney ghostwriting on behalf of *pro se* litigants, the Second Circuit has yet to conclude that ghostwriting is necessarily an ethical violation.") (citing *In re Fengling Liu*, 664 F.3d 367, 369-72 (2d Cir. 2011) (discussing other circuits' approaches and concluding that, in light of a 2007 ethics opinion issued by the American Bar Association, an attorney's ghostwriting did not violate her ethical obligations).

This case raises some of the concerns noted by these courts and commentators. The opposition submitted on behalf of Mr. Askins raises novel legal arguments in support of Mr. Askins' claims—in particular the *Ex parte Young* argument described below. But the argument is not fully developed in Mr. Askins' briefing. And, while Mr. Askins signed the opposition, the Court questions whether Mr. Askins will be able to engage in the kind of supplemental argument or briefing on his own that would be helpful to the Court's analysis of the issue.

To afford Mr. Askins the special solicitude generally afforded *pro se* litigants in this case would allow him the benefit of legal counsel while also subjecting him to a less stringent standard reserved for those litigants who are truly unrepresented. Accordingly, the Court will not afford the statement of facts in Mr. Askins' SAC or his opposition the special solicitude usually afforded to *pro se* litigants.[3] However, the Court will construe the portions of his complaint which were not clearly drafted with the substantial assistance from an attorney—principally his claims for relief—liberally.

**III. DISCUSSION**

    **A. Claims against the MTA and NYCTA**

In the SAC, Mr. Askins alleges violations of the ADA, the Rehabilitation Act, and the NYSHRL. SAC at 3. The Court construes the SAC as stating claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and analogous provisions of the NYSHRL. Because Mr. Askins is acting *pro se*, the Court also construes the SAC as raising a claim for relief under the NYCHRL. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act states that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

"To state a claim under Title II of the ADA, the plaintiff must allege 'that (1) he or she is a

---

[3] The Court notes that Mr. Askins is not wholly unfamiliar with litigation: Mr. Askins has sued various city agencies—often repeatedly—including the Department of Corrections, NYPD, and NYCTA, as well as privately owned companies. *See, e.g.*, *Askins v. New York City Transit* (*Askins I*), No. 11 CIV. 6371 PGG, 2013 WL 142007 (S.D.N.Y. Jan. 8, 2013); *Askins v. City of New York*, No. 10 CIV. 2230 (CM), 2012 WL 12884363 (S.D.N.Y. Feb. 14, 2012), *aff'd in part, vacated in part, remanded sub nom.*, *Askins v. Doe No. 1*, 727 F.3d 248 (2d Cir. 2013)); *Askins v. City of New York,* 2011 WL 1334838 (S.D.N.Y. Mar. 25, 2011); *Askins v. Weinberg, et al.*, (19-cv-08793)(ALC); *Askins v. Prestige Management*, 101386/2018 (N.Y. Sup. Ct. 2019); *Askins v. City of New York, et al.,* (09-cv-02273) (AKH); *Askins v. D.O.C., et al.,* (98-cv-09003) (DC).

qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo*, 579 F.3d at 185 (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)) (brackets omitted). The Second Circuit has held that "§ 504 of the Rehabilitation Act and Title II of the ADA offer essentially the same protections for people with disabilities." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 114 (2d Cir. 2001) (citations omitted).[4] Similarly, "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004); *see also Cave v. East Meadow Union Free Sch. Dist.*, 480 F. Supp. 2d 610, 643 (E.D.N.Y. Mar. 19, 2007). Accordingly, the Court applies the same framework to Mr. Askins' federal law and NYSHRL claims.

In this case, the first two elements of Mr. Askins' Title II claim are undisputed. Defendants do not dispute that as a wheelchair-user, Mr. Askins qualifies as an individual with a disability, or that the NYCTA and MTA are public entities subject to the ADA. MTD at 3. Defendants contend, however, that Mr. Askins was not denied any benefit or discriminated against by reason of his disability. *Id.* at 2-3. Specifically, defendants argue that "eight instances of alleged unsatisfactory service over the past four years do not establish a failure to provide accessible bus service in violation of any law." *Id.* at 2.

The SAC plausibly alleges a claim for disability discrimination. Mr. Askins alleges that he has been denied bus service numerous times and has specifically described four incidents in which he was prevented from boarding New York city buses entirely. SAC at 17-21. Mr. Askins has presented the dates, times, locations and the identifying numbers of the buses involved, and also

---

[4] Although there is an "additional requirement that defendants must receive federal funding" for a plaintiff to state a claim for a violation of the Rehabilitation Act, Defendants do not contest this element. *Shomo*, 579 F.3d at 185 (citing *Henrietta D.*, 331 F.3d at 272) (citation omitted).

9

claims to have photographic and video evidence of some of the incidents. *Id.* at 19, 21. Mr. Askins' allegations are sufficient to plausibly plead a claim for disability discrimination.

Defendants argue that the SAC must be dismissed because "[t]he ADA and its implementing regulations do not contemplate perfect service for wheelchair-using bus customers." MTD at 3 (quoting *Stauber v. NYC Transit Auth.*, 781 N.Y.S.2d 26, 28 (1st Dep't 2004)); *see also id.* (arguing that "[o]ccasional problems, without more, do not constitute a violation of the ADA.") (quoting *Midgett v. Tri-County Metro Transp. Dist.*, 254 F.3d 846, 849 (9th Cir. 2001) and citing *Jones v. Nat'l R.R. Passenger Corp.*, No. 15-CV-02726-TSH, 2019 WL 5087594, at *9 (N.D. Cal. Oct. 10, 2019); *Dorsett v. Se. Pennsylvania Transp. Auth.*, No. CIV.A. 04-5968, 2005 WL 2077252, at *5 (E.D. Pa. Aug. 29, 2005)). However, *Stauber*, *Midgett*, *Jones*, and *Dorsett* were decided on summary judgment.[5] They do not provide the pleading standard for a disability discrimination claim. The appropriate standard at this phase of the litigation is whether Mr. Askins has plausibly alleged that he was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Shomo*, 579 F.3d at 185 (citation omitted) (brackets omitted). Mr. Askins has alleged, with specificity, at least four incidents in which he was denied access to New York City bus services. That is sufficient to meet the pleading standard on this motion to dismiss.

In 2013, Mr. Askins filed a similar case against NYCTA alleging disability discrimination. *Askins I*, 2013 WL 142007, at *1. Specifically, Mr. Askins alleged that between 2008 and 2011 he was "denied access to NYCTA buses on twenty separate occasions and his complaint set forth specific times and locations for fourteen of these incidents." *Id.* In response, the defendants "moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." *Id.* at *2. In that case, the

---

[5] Defendants also cite *Carroll v. Suffolk Bus Corp.*, 2014 NY Slip Op 33352(U), ¶ 8 (N.Y. Sup. Ct. 2014). That case was also decided on summary judgment.

10

court determined that Mr. Askins had adequately alleged a claim for "disability discrimination under Title II of the ADA." *Id.* at *3-4. The court found that the Complaint went "far beyond conclusory accusations" because Mr. Askins presented "dates, times, and locations at which the alleged discrimination took place[.]" *Id.* at *3. The same is true here.

Defendants attempt to distinguish *Askins I* by arguing, that in that case, "[t]he number of successful rides was not pled [sic]." MTD at 4 n.4. Defendants seize on the SAC's allegation that "Mr. Askins rides NYC buses approximately 8-12 times per week," SAC at 15, to argue that Mr. Askins "has ridden the buses approximately 2,080 times over the last four years[.]" MTD at 1.

This attempt to distinguish *Askins I* is unconvincing. That case involved twenty instances over a four-year period, *Askins I*, 2013 WL 142007, at *1, and the *Askins I* court did not base its holding on the percentage of rides on which Mr. Askins was denied service. The court's persuasive analysis in *Askins I* is equally applicable to Mr. Askins' allegations in this case. Accordingly, Defendants' motion to dismiss Mr. Askins' federal law and NYSHRL claims against MTA and the NYCTA is denied.

The SAC also plausibly pleads a cause of action under the NYCHRL. Although NYCHRL claims had for many years "been treated as coextensive with state and federal counterparts," the New York City Council, in passing the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), "rejected such equivalence" in favor of a broader remedial scope. *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citation omitted). The Restoration Act established two new rules of construction for the NYCHRL: (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a floor below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-

11

worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7) (emphasis omitted). The Second Circuit has clarified that these amendments to the Restoration Act require courts to analyze NYCHRL claims "separately and independently from any federal and state law claims." *See id.* The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)). Because the Court has declined to dismiss Mr. Askins' federal and NYSHRL claims, it likewise declines to dismiss Mr. Askins' claims under the more plaintiff-friendly NYCHRL standard.

**B. Claims Against the Individual Defendants**

The Court must dismiss Mr. Askins' federal claims against the Individual Defendants in their individual capacities. The SAC does not specify whether the claims against the Individual Defendants are pleaded against them in their official or individual capacities. Thus, the Court construes the SAC to raise claims against the Individual Defendants both in their individual and their official capacities. *See Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."). "Insofar as" Mr. Askins "is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia*, 280 F.3d at 107 (citations omitted). Accordingly, to the extent that Mr. Askins has pleaded claims against the Individual Defendants in their individual capacities, those claims are dismissed. The Court denies Mr. Askins leave to replead these claims because any attempt to replead would be futile. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment

12

would be futile).

The Court does not dismiss the SAC's federal claims against the Individual Defendants in their official capacities, however. Fundamentally, counsel for the Individual Defendants does not address the distinction between an action against the Individual Defendants in their official capacity, as opposed to their individual capacity, at all in either their initial four-page "letter" brief, or in their two-page reply. In particular, counsel for the Individual Defendants failed to engage with Mr. Askins' argument that the case can proceed against the Individual Defendants in their official capacities under the doctrine of *Ex parte Young*, because Mr. Askins is seeking injunctive relief. In his opposition, Mr. Askins argues that a "[s]tate officer sued in her official capacity under the doctrine of *Ex parte Young* was a 'public entity' subject to liability under Americans with Disabilities Act." Opp. at 6 (citing *Henrietta D.*, 331 F.3d at 288). The Court observes that there is a substantial question whether bus drivers such as Mr. Roman and the other John Doe bus drivers are appropriate defendants under *Ex parte Young*. (The plaintiffs in *Henrietta D.* named as defendants Michael Bloomberg, then the mayor of New York, and other high-level government officials, not line workers implementing their policies.) But Defendants do not address this issue at all in their two-page reply brief. Lacking substantive briefing from the Individual Defendants on this issue, the Court declines to dismiss the federal claims against the Individual Defendants in their official capacity at this time.

Defendants have only asked the Court to dismiss Mr. Askins' federal claims against the Individual Defendants. *See* MTD at 4 (arguing that "Plaintiff's *federal* claims against the individually named bus operator must be dismissed") (capitalization altered) (emphasis added). Accordingly, the any claims against the Individual Defendants under the NYSHRL or the NYCHRL survive this motion.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss Mr. Askins' claims against the MTA and the NYCTA under federal, state, and city law is denied. Defendants' motion to dismiss Mr. Askins' federal claims against Mr. Roman and the John Doe bus drivers in their individual capacities is granted without leave to replead. All other claims against the Individual Defendants, however, survive this motion—including claims against them under federal law in their official capacities.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 23 and to mail a copy of this order to Mr. Askins by first-class and certified mail.

SO ORDERED.

Dated: March 5, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge